Barbarine CARRY, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant-Appellee.

No. 84–2387

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1985.

Peter F. Doyle, Jr., Port Arthur, Tex., for plaintiff-appellant.

William J. Cornelius, Jr., Asst. U.S. Atty., Tyler, Tex., Karen J. Behner, OGC/HHS, Dallas, Tex., for defendant-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge.

The Secretary of Health and Human Services has denied social security benefits to claimant Barbarine Carry. Carry sought judicial review of the denial in district court, but the court entered summary judgment in favor of the Secretary. We affirm the Secretary's decision concerning Carry's residual functional capacity because the Secretary's decision was reached on the basis of a correct application of the law and is supported by substantial evidence. However, we partially reverse and remand because the Secretary failed to make findings on the issue of pain as, itself, disabling.

## I. *Medical History*

At the time of the hearing before the Administrative Law Judge, April 7, 1981, Carry was 40 years old. She is of medium build and average height. She is divorced but cares for three children ranging in age from 7 to 17 years. She has completed her education through the eleventh grade and has no special skills or training to speak of. In the past years she has labored as a maid, a school bus driver, a flower shop attendant and a nurse's aid, the latter for some eight of the last fifteen years.

Carry's health problems began when, on May 14, 1979, she injured her back in attempting to lift a patient of the Golden Triangle Nursing Home in Port Arthur, Texas. In the following months, Carry was examined by several doctors, and she underwent therapy ranging in form from exercise and application of heat to medication.

The doctors universally agreed that Carry's problem was, and is, a "herniated nucleus pulposas, L5–S1," which, in layman's terminology, refers to a ruptured disc in the lower back. A mental health center has also reported that Carry suffers from a "generalized anxiety disorder" with an undetermined prognosis. In connection with her back condition, she underwent surgery which apparently failed to correct it completely. After surgery, Carry continued to complain of pain and limited movement in her back, radiating to her legs. For this reason, she continued to visit doctors and hospitals and to undergo physical examination and clinical testing and to receive medication and various other forms of therapy.

## II. *Procedural History*

The procedural posture of the case is crucial to our decision. In April 1980 Carry applied for both disability insurance benefits and supplemental security income benefits. After benefits were denied administratively, Carry sought *de novo* consideration of her claims by an Administrative Law Judge (ALJ). After a full hearing at which Carry, represented by a paralegal, testified at length concerning the pain and discomfort she had experienced since her injury, the ALJ denied benefits. He found that Carry was not disabled within the meaning of the Social Security Act,[1] because her medical condition was not severe enough to limit her ability to perform basic work-related functions.[2] The ALJ additionally found that the "evidence alleging pain [was] not documented by sufficient credible evidence to demonstrate a degree of severity considered disabling under the Social Security Act ...."[3] The Appeals Council rendered the ALJ's decision the final order of the Secretary by denying Carry's request for review.[4]

Under the authority of 42 U.S.C. § 405(g), Carry sought judicial review of the Secretary's denial by filing a complaint in the United States District Court for the Eastern District of Texas. However, when Carry brought to the district court's attention new evidence consisting of two addi-

---

1. *See* 42 U.S.C. § 423(d)(1)(A), (d)(2)(A), note 8, *infra,* for the definition of disability.

2. *See* 20 C.F.R. § 404.1520(c) (1984). Subsequent references to social security regulations are those found in C.F.R., Title 20 (1984).

3. Record on Appeal at p. 11. Subsequent references to the Record on Appeal will be to "Record."

4. *See* 20 C.F.R. § 404.967.

tional doctors' reports, the court remanded the case to the Secretary for reconsideration in light of the new evidence.[5] Rather than remanding to the ALJ, the Appeals Council vacated its original denial of review and entered its own findings, incorporating by reference only the ALJ's statements of the issues and of the evidentiary facts that were before him. The Appeals Council thought the new evidence was merely cumulative in relation to the evidence previously of record. However, in entering its findings, the Appeals Council extensively modified the ALJ's initial findings. It found that Carry was, indeed, suffering from a severe impairment, that the impairment prevented her from performing her past relevant work as a nurse's aide,[6] but that she retained the residual functional capacity to perform the full range of "light work," and, therefore, in view of her age, education and work experience, she was not disabled.[7] The Appeals Council made no finding concerning the evidence of pain nor was any mention made of the issue of pain as disabling in and of itself. Carry again took her claim before the district court which entered summary judgment against her.

### III. *Procedural Rules*

To go forward with her claim, Carry had to shoulder the weighty procedural and evidentiary burdens that abound in this area of the law. First, the claimant bears the burden of proving disability. *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981).[8] To establish a *prima facie* case of disability, the claimant must show she can no longer perform her former work. *Callais v. Schweiker,* 694 F.2d 427, 428 (5th Cir.1982); *see* 42 U.S.C. § 423(d)(2)(A).

---

5. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.983.

6. *See* 20 C.F.R. § 404.1520(e).

7. *See* 20 C.F.R. § 404.1520(f) and 20 C.F.R. pt. 404, subpt. P, appendix 2, §§ 202.17, 202.18.

8. Congress defines disability as follows:
   The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

The burden then shifts to the Secretary to show that there is other substantial gainful employment in the national economy that the claimant can perform. *Id.* The Appeals Council concluded that, although Carry discharged her burden, the Secretary also came forward with enough evidence to carry her responsive burden and merit a finding of "no disability." We are asked to review this finding.

On appeal, Congress adds to Carry's already heavy burden by declaring that the Secretary's fact findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). In addition, conflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ. *Oldham v. Schweiker,* 660 F.2d at 1083. The thrust of Carry's argument before us is that the record is replete with evidence of her disability. This we may concede. We may even agree that the evidence preponderates in her favor. Even so, regardless of our evaluation of preponderance, we may not reverse unless we find that there is not substantial evidence to support the ALJ's findings. *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir.1983); *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir.1981). Thus, the first issue presented is whether there is substantial evidence in the record to conclude that Carry's residual functional capacity permits her to perform light work.

### IV. *Discussion*

#### A. Residual Functional Capacity

Once the Secretary has determined that the jobless claimant has a severe impairment which does not meet or equal a listed

---

or can be expected to last for a continuous period of not less than 12 months . . . .

\* \* \* \* \* \*

[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .
42 U.S.C. § 423(d)(1)(A), (2)(A) (1983).

impairment in Appendix 1, but prevents the claimant from doing her past relevant work, *see* 20 C.F.R. § 404.1520(b)–(e), she must determine whether the impairment prevents the claimant from "engag[ing] in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.-1520(f). This determination is, in turn, based on the claimant's residual functional capacity, age, education and past work experience. 20 C.F.R. § 404.1520(f).

The Secretary defines residual functional capacity as "what [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a). It is a medical assessment to which all of claimant's limitations are relevant, even those that do not constitute symptoms crucial to diagnosis and treatment. *Id.* The claimant's ability to engage in physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching and handling are to be considered in evaluating the "exertional" aspect of residual functional capacity. 20 C.F.R. § 404.1545(b). The assessed exertional aspect is then labelled according to the categories set out in 20 C.F.R. § 404.1567. "Light work," the category in which Carry was found to be included, is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . .

20 C.F.R. § 404.1567(b). If there is substantial evidence in the record to support a finding that Carry is capable of such work, we must affirm on the first issue.[9]

The evidence of Carry's ailment was well-developed. More than a dozen doctors reported on various aspects of her health. Yet there is little conflict in the record as to Carry's residual capacity to do light work. On September 12, 1980, Dr. Paul Richmond, a doctor connected with the Social Security Administration, assessed Carry's residual functional capacity as permitting her to stand and walk for six to eight hours per eight hour day, to sit for the same period, to lift, carry, push or pull 25 pounds of weight frequently and 50 pounds occasionally,[10] to use her hands and arms for simple grasping and fine manipulation, to use her feet for repetitive movements such as operating foot controls, and to bend, kneel, crouch, crawl, and climb and balance occasionally. Record at 58. Dr. Richmond's assessment was based on Carry's medical history, x-rays and a physical examination. A later residual functional capacity assessment, conducted by Dr. Walter Bell, an "attending physician,"[11] described her exertional capacity as within normal limits. Record at 107. Dr. Martin R. Haig, who treated Carry from about June 1980 to March 1981, reported, on June 11, 1980, that Carry was able to "do any type occupation, medium or light, that she

---

**9.** Our review ends at this stage because the Secretary correctly applied the regulations to the finding that Carry could still perform light work. Using the "grid" medical-vocational guidelines which apply to claimants capable of engaging in light work, 20 C.F.R. pt. 404, subpt. P, appendix 2 §§ 202.01–202.22, the Secretary concluded that, whether § 202.17 or § 202.18 applied, the guidelines compelled a decision of "not disabled." Use of the guidelines in this fashion was approved by the Supreme Court in *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 1958, 76 L.Ed.2d 66, 75 (1983). The Appeals Council found no "nonexertional" limitations. *See,* 20 C.F.R. § 404.1545(d). Only if nonexertional limitations are found is the Secretary obliged to proceed further and make an individualized determination of the claimant's ability to perform specific jobs in the national economy. *Parris v. Heckler,* 733 F.2d 324, 326 (4th Cir.1984).

**10.** This exertional level corresponds to the category of "medium work." 20 C.F.R. § 404.-1567(c).

**11.** There is no indication in the record as to what this term means. It is unclear whether Dr. Bell treated Carry.

desires," and that she was "not disabled." Record at 103. This evaluation was based on an examination and x-rays that showed the alignment and spacing of her vertebrae and her range of leg movement to be normal. Record at 102. Based upon a "lumbar myelogram", a testing technique which produces enhanced photographic images of the spinal region by introducing a non-toxic dye into the area, Dr. Haig concluded, in March 1981, that there was no need to consider further surgery to alleviate Carry's alleged pain. Record at 110. The myelogram "revealed definite normal findings" in the troubled area. *Id.* Dr. Haig released Carry from the hospital after prescribing medication. Record at 111.

The only relevant medical evidence which favors Carry is that reported by Drs. James R. Oates and Joseph S. Vadas, both of whom treated Carry after the hearing before the ALJ. Pertinent to Carry's exertional limitations,[12] Dr. Oates reported that Carry experienced "minimal limitation of full range of unassisted flexion of [the] cervical vertebrae ... 95% of [the] normal range of cervical rotation toward either side ... [and that] lateral tilting of the neck [was] 90% of normal to the left; 75% toward the right." Record at 129. When attempting to touch her toes, Carry brought her fingers to a point approximately 6 inches above the floor. Lateral tilting toward either side was 75% of normal and rotation to either side was "essentially normal." Record at 132. On the basis of these and other findings, Dr. Oates concluded that Carry's impairment was equivalent to listed impairment 1.05C in 20 C.F.R., pt. 404, subpt. P, appendix 1. If accepted by the Secretary,[13] such a conclusion would merit a finding of disability under 20 C.F.R. § 404.1520(d). Dr. Vadas merely wrote a short note adopting Dr. Oates' findings and agreeing with his conclusion that Carry was disabled.

We hold that there is substantial evidence in this record to support the Appeals Council's findings. Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician. *Oldham v. Schweiker,* 660 F.2d at 1084. However, this principle is only relevant where there is a conflict in the medical evidence. We find no important conflict here. The reported assessments of Carry's residual functional capacity by consulting Drs. Richmond and Bell concurred with the medical evaluation of treating Dr. Haig. Although Dr. Oates' conclusion that Carry's impairment equalled a listed impairment in Appendix 1 is most reasonably read as contradicting the judgment of the other doctors that Carry could still perform light work, it does not directly include an evaluation of Carry's residual functional capacity because that is irrelevant at the stage Dr. Oates terminated his inquiry. *See* 20 C.F.R. § 404.1520(d). Further, Dr. Oates' only observations of Carry's physical capabilities, such as flexion and range of motion, indicate that she had close to normal functioning and are consistent with the conclusion that Carry's capacity for work is limited but not so severely that she cannot perform "light work."

We observe also that, to the extent it might have perceived conflicts between their respective reports, the Appeals Council could have given more weight to the testimony of Dr. Haig than to that of Dr. Oates, both of whom were treating doctors. Nor would such a resolution have been improper since it is the function of the Secretary, not that of the reviewing court, to resolve conflicts in the evidence. *Oldham v. Schweiker,* 660 F.2d at 1083. Whether or not we read the record as disclosing a conflict in the medical evidence

---

**12.** Although Dr. Oates' observations do not directly describe exertional capacity, they indirectly indicate Carry's ability to engage in certain movements relevant to exertional capacity. Notably absent is any evaluation of Carry's endurance capacity, e.g., how long she could sit, walk or stand, or of her strength, e.g., how much weight she could lift, carry, push or pull.

**13.** The Secretary is not bound by a doctor's conclusion that a claimant is disabled. 20 C.F.R. § 404.1527; *Epps v. Harris,* 624 F.2d 1267, 1274 (5th Cir.1980).

concerning Carry's residual functional capacity, we think there was substantial evidence before the Secretary to justify the conclusion that Carry is capable of performing the full range of light work.

### B. Disabling Pain

The second issue arises from the Appeals Council's failure to make finding concerning the evidence of pain suffered by Carry. That evidence consisted, primarily, of Carry's testimony at the hearing and the reports of the several doctors who recorded her complaints. There is some objective medical evidence to corroborate Carry's subjective complaints of pain. Particularly relevant is the report of Dr. Oates which extensively documents Carry's tender anatomical regions and "objective spasms" which result, apparently, from the patient's experience of pain. However, there is also some medical evidence, such as the reports that she had a fairly extensive range of motion in her back, neck and legs, which calls into question the credibility of Carry's complaints.

■ Pain may be disabling in and of itself even without support in the medical evidence, if it is linked to a medically determinable impairment. *Loya v. Heckler*, 707 F.2d 211, 214 (5th Cir.1983); *see also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir.1981), and cases cited therein. For this reason, the Secretary *"must* consider subjective evidence of pain" whether it is comprised of the testimony of the claimant or of those who have observed her, or both. *Scharlow*, 655 F.2d at 648 (citing *Depaepe v. Richardson*, 464 F.2d 92, 99 (5th Cir. 1972)) (emphasis in original). Moreover, "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand."

*Scharlow*, 655 F.2d at 649 (citing *Hayes v. Celebrezze*, 311 F.2d 648, 653–54 (5th Cir. 1963)). However, the ALJ need not give subjective evidence precedence over medical evidence, nor is all pain disabling. *Loya*, 707 F.2d at 214. To a great extent, the ALJ's resolution of conflicts between the subjective evidence and the medical evidence should depend upon his evaluation of the credibility of the claimant's complaints of pain. *Id.* at 214–15.

Here, the ALJ stated that "[t]he evidence has been evaluated to determine its reliability, probative value and evidentiary weight," that "the demeanor and facade of the claimant [have been] visually observed at the hearing when the testimony was presented", and that he had "given due consideration to ... the claimant's complaints, including all those expressing pain and restriction of movement." Record at 10. The ALJ then specifically found that the evidence of pain was not "documented by sufficient credible evidence to demonstrate a degree of severity considered disabling under the ... Act." Record at 11. Due to our holding, explained below, we need not decide whether, nor do we hold that, these findings were proper or adequate to indicate the ALJ's consideration of subjective evidence of pain under *Scharlow*.[14]

■ The unique procedural posture of this case has given us pause to consider what is, apparently, a novel issue in this circuit. When the Appeals Council took this case on remand from the district court, it was required, in effect, to reopen the case for reconsideration and, if necessary, to revise or modify the ALJ's decision in light of the new evidence.[15] Subsequently, the Appeals Council, in issuing its findings, vacated its denial of Carry's request for review of the ALJ's decision. Although it incorporated by reference the ALJ's state-

---

**14.** We observe, however, that the ALJ failed to comment directly on the truthfulness of Carry's testimony and complaints; nor did he "indicate ... the basis for [any] choices" he made in resolving the issue of Carry's credibility. *Scharlow*, 655 F.2d at 649. On remand, the Secretary should carefully consider the requirements of *Scharlow* in making additional findings.

**15.** *See* 42 U.S.C. § 405(g); *Parks v. Harris*, 614 F.2d 83, 84–5 (5th Cir.1980); *cf.* 20 C.F.R. §§ 404.987(a), 404.989(a)(1).

ment of issues and evidentiary facts, the Appeals Council did not adopt his findings on any issue. Indeed, the Appeals Council directly rejected the ALJ's finding concerning the severity of Carry's impairment under 20 C.F.R. § 404.1520(c), and otherwise extensively modified the ALJ's decision. Thus, we are presented with a record that shows an explicit finding (by the ALJ) concerning subjective evidence of pain, which finding has been nullified by the order of the Appeals Council, the final voice of the Secretary. *See* 20 C.F.R. §§ 404.981, 404.-993. Unless the issue of pain was finally settled by the ALJ's initial decision, we must conclude that the Secretary made no finding concerning the subjective evidence of pain.

The Social Security Act provides that the district court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.983. The inquiry concerning "good cause" is directed at determining whether consideration of the additional evidence "[is] necessary to a just determination of claimant's application." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2nd Cir.1975), *quoted in Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir.1979). After hearing the additional evidence on remand, "the Secretary shall ... modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision." 42 U.S.C. § 405(g). "Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision." *Id.*

In Carry's earlier appeal from the Secretary's denial of her claim, the district court only remanded the case to the Appeals Council for reconsideration in light of the reports of Drs. Oates and Vadas. These reports obviously did not include new subjective evidence of pain. However, we observe that to the extent objective medical evidence can bolster the credibility of a claimant's subjective complaints, for instance, by linking them with a medically determinable impairment,[16] Dr. Oates' report, referring as it did to tender anatomical regions, reflexive reactions, and symptoms which are often accompanied by pain, was probative of Carry's credibility. Thus, the nature of the remand and reconsideration, as well as the force of the Appeals Council's order vacating its denial of review of the ALJ's initial decision, revived the entire claim, not just the residual functional capacity issue. This rendered the ALJ's credibility finding non-final and, therefore, non-binding on the parties.[17]

On the earlier remand the Appeals Council should have considered the relevance of the new evidence to Carry's complaints of pain, as well as its relevance to Carry's exertional limitations, and it should have made sufficient new findings, guided by *Scharlow*, concerning the credibility of those complaints as bolstered by the new evidence. We observe that the ALJ's determination of credibility is not binding on the Appeals Council, although it should not be discarded lightly. *Beavers v. Secretary*, 577 F.2d 383, 386–7 (6th Cir.1978). If the Appeals Council rejects the credibility findings of the ALJ "it should do so expressly, identifying the considerations which led to its conclusion." *Beavers*, 577 F.2d at 387 (citing *Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir.1974)). Thus, where the Appeals Council enters its own findings in reviewing the ALJ's decision, and it decides that in light of all the evidence the ALJ's credibility findings are correct, then it should affirm the findings explicitly.

In light of the dual relevance of the new evidence in the instant case and the Appeals Council's function as the final voice of the Secretary, we cannot assume that here the Appeals Council accepted the credibility findings of the ALJ. Since the Ap-

---

**16.** *See Scharlow*, 655 F.2d at 648.

**17.** *Cf.*, 20 C.F.R. § 404.955(b).

peals Council failed to make findings concerning pain, we cannot determine whether it considered all the evidence of pain suffered by Carry nor, particularly, can we determine whether it fully considered the new evidence, which "was necessary to a just determination of [Carry's] application." *Cutler*, 516 F.2d at 1285.

We, therefore, reverse the district court's order granting summary judgment and remand to the district court with instructions that it remand this case to the Secretary for consideration of the evidence of pain suffered by Carry and findings concerning whether pain, in and of itself, is disabling to Carry.

AFFIRMED IN PART.

REVERSED AND REMANDED IN PART.