Carol A. HOLLIS, Plaintiff-Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.

No. 87-4656
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 25, 1988.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

Thelma L. Harmon, Asst. Reg. Counsel, Haila N. Kleinman, Dept. of HHS, Office of Gen. Counsel, Reg. IV, Atlanta, Ga., for defendant-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

PER CURIAM:

Plaintiff appeals the denial of social security disability benefits and supplemental security income. However, our review of the record compiled in this case convinces us—as it did the district court—that the administrator's decision to deny benefits is supported by substantial evidence; similarly, we find that plaintiff's claims were tested during the administrative process by the proper legal standards. Therefore, we affirm.

## I.

Carol Hollis ("Hollis") is a thirty-six year old woman who completed ten years of school and later earned a general education diploma. She has no special job training other than her work experience and is divorced—although she and her two children presently live with Hollis' ex-husband. She smokes approximately half a pack of cigarettes per day. Until September, 1983, Hollis worked at a number of jobs; over various periods of time, she operated a sewing machine, loaded and unloaded potted plants at a wholesale nursery, plugged wires on an assembly line at an electronics firm, and folded greeting cards at a greeting card company. Beginning in March of 1980, Hollis began experiencing problems

with her back, her legs, and her hands. According to Hollis, the problems continued to grow worse. They also began to affect her ability to hold a job and finally, during the first week of September 1983, they compelled her to leave a job she had held for only one day. Since then, Hollis has neither worked outside the home nor looked for another job.

On November 7, 1983, Hollis filed an application for social security disability benefits and supplemental security income.[1] In her application, Hollis listed "arthritis of the spine" as her disability, and gave March 22, 1980, as the date on which the disability became severe enough to affect her ability to work. At a hearing before an administrative law judge ("ALJ"), Hollis presented medical records to support her claim of disability. These records revealed that in 1980, Hollis complained to Dr. A.P. Soriano about pain in her major joints. She told Dr. Soriano that she had been under the care of a Dr. Blackwell for arthritis in her neck, upper back, shoulders, and arms. Although Hollis complained that her pain was increasing, Dr. Soriano could see no joint swelling; however, a mass over the sacral region did prompt Dr. Soriano to refer Hollis to the Meridian Bone and Joint Clinic, where she was to see Dr. Robinson. The medical records from Dr. Robinson show that after examining Hollis, Dr. Robinson made the following observations about her condition: she moved with minimal guarding of the lumbo-sacral area to and from the examining table; her neurological reflexes were intact as to motor function, strength, deep tendon reflexes, and sensation to touch, pin prick, and vibration; and she experienced tenderness in the lumbo-sacral area but no acute muscle spasm. X-rays showed no evidence of intrinsic bone or joint pathology other than an increased lumbo-sacral lordotic curve, and Hollis was diagnosed and treated for an "ergonomic associated chronic lumbo-sacral strain." She was educated in exercise procedures to alleviate her symptons and given some medication.

Hollis' medical records also reveal that in 1982 and 1983, Hollis again saw Dr. Soriano because of back, chest, and shoulder pain. During these visits, Dr. Soriano diagnosed bursitis of the right shoulder, rheumatoid arthritis, and anxiety reaction. He treated each of these conditions with prescription medication. Medical records from 1983 show that during that year, Hollis went to the Madden Medical Clinic on several occasions and was examined by Dr. David Moody. Her complaints to Dr. Moody were of chest pain with a choking-type sensation and "aching all over." As reflected by his records, Dr. Moody concluded that Hollis suffered from costochondritis and mild arthritic changes, primarily in her arms, shoulder, neck, and back. However, he also noted that—despite the arthritis—Hollis did not have a significant decrease in mobility or in range of motion of her extremities. Medical records from 1984 show that during that year, Hollis was admitted to the Neshoba County General Hospital complaining of dizziness, chest pain, and syncope without loss of consciousness. Dr. John Mutzinger, her physician during the hospital stay, wrote in his records that X-rays taken during that time showed that Hollis has slight scoliosis of the thoracic spine; Dr. Mutzinger also determined, however, that Hollis' heart and lungs tested within normal limits and that she exhibited a full range of movement in her extremities. He prescribed medication which improved Hollis' chest pains.

Besides the medical records, both Hollis and her ex-husband testified before the ALJ. Much of Hollis' testimony focused on her symptoms. She claimed to experience cramping and drawing in her hands whenever she used them for short periods of time, constant headaches which resulted from neck pain, pains which radiated from

---

1. The application which we review today is actually Hollis' second application for benefits. Her first application, which was filed on August 28, 1980, was denied on September 2, 1980. Hollis did not further pursue her administrative remedies after this first adverse decision. Appropriately—since we lack jurisdiction to review the denial of Hollis' first application, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)—Hollis does not ask that we examine the Secretary's 1980 decision.

the muscles in her arms and elbows, numbness in her hips and legs, and difficulty sleeping because of her severe discomfort. Hollis also testified, however, that despite her symptoms she continues to keep house and cook for her two children, shop for groceries, do the laundry, take occasional walks, and drive a car. Mr. Hollis' testimony substantiated the testimony given by his ex-wife.

After hearing the testimony and examining all the medical records, the ALJ denied Hollis' application for benefits. According to the ALJ, the evidence presented by Hollis showed that her injuries were "nonsevere" within the meaning of the Social Security Act. After receiving this ruling, Hollis pursued her administrative remedies with the appeals council; however, just as the ALJ had done, the appeals council rendered a decision unfavorable to Hollis. Since she had exhausted her administrative remedies, Hollis' next step was to file a civil action against the Secretary of Health and Human Services ("the Secretary") in the United States District Court for the Southern District of Mississippi. Her case was assigned to a United States Magistrate who, after reviewing the record, concluded that in denying Hollis benefits on the basis of nonseverity of injury, the ALJ did not follow the proper legal standard as set forth in *Stone v. Heckler,*

752 F.2d 1099 (5th Cir.1985). Consequently, the magistrate remanded the entire case for reconsideration of the facts in light of the legal standard of *Stone.*

On remand, the ALJ conducted a second hearing. Again, Hollis testified about her symptoms. She supplemented her earlier testimony by explaining that now, if she sits for any length of time, she experiences a "muscle spasm" type pain which travels from her right hip down to her legs; but if she stands for an hour or an hour and a half, her lower back begins to ache, her knees feel weak, and she feels pains in her legs. Hollis admitted, however, that she still performs the same household tasks she testified to during the first hearing, and that she still drives several times a week. Hollis presented no new medical evidence to substantiate her claims of disability.[2]

After the second hearing, the ALJ filed his second recommended decision in Hollis' case. In his recommendation, the ALJ determined that, when measured by the *Stone* criteria, Hollis suffers from a "severe" impairment. According to the ALJ, Hollis suffers from severe chronic lumbosacral strain, syncope of undetermined origin, and bursitis of the right shoulder. In addition, she has a history of arthritis. The ALJ also concluded, however, that despite her impairments, Hollis has the resid-

---

**2.** The ALJ gave Hollis the opportunity to present additional medical records both during and after the hearing. During the hearing, Hollis submitted only a more legible copy of some medical records which had previously been admitted as Exhibit 29. Hollis' attorney, however, suggested to the ALJ that Hollis was in the process of obtaining an updated report from Dr. Moody, her primary treating physician. Although Hollis asked Dr. Moody three weeks before the hearing to prepare the report, no response had been received. Hollis' attorney requested additional time in which to file the report before the ALJ rendered a decision, and the following dialogue took place:

 ALJ: Was that the first effort that you've made to get your documentation in order?

 Attorney: Well, it was the first chance I've had to talk to her since I had gotten the notice of the hearing.

 ALJ: Well, nobody but you and I know what's going on right now. The record is (inaudible) and you and I have had so many conversa-

tions about getting our record in order before we go to hearing, and what's particularly concerning me on this case, is that this is a court remand and has been application goes back to 1980—the court sent it back to us to correct an error and I'd like to do everything I can to make a good record and correct any errors that have been made previously.

 I'm—it is difficult to understand why you waited until the last 3 weeks, to attempt to develop these records, since we—since the last record is at least 2 years old or older, over 2 years. I expect that there will be some delay before a decision can go out anyway in this case. Because of the workload in this office. I'll just ask you to get your development in just as soon as you possibly can. I'm not going to hold the record for any definite set period of time.

This conversation took place on April 8, 1986, the date of the hearing. The ALJ rendered his decision on May 20, 1986. As far as we can tell from the record before us, Hollis never filed the report from Dr. Moody.

ual functional capacity to perform her past work and, therefore, is not disabled within the meaning of the Social Security Act. In reaching this conclusion, the ALJ explained:

A finding of disability may not be based on subjective symptomatology alone, but must be based on objective evidence, including results of medically acceptable clinical tests and laboratory diagnostic techniques, which demonstrate disability as defined in the Social Security Act and Regulations. Physical or mental impairments and related symptomatology (such as pain, shortness of breath, weakness, or nervousness) are considered, and the extent to which the signs and laboratory findings confirm these symptoms are carefully evaluated.... A claimant will not be determined to be disabled based on self-declarations alone, including pain, nervousness, or other subjective symptomatology, unless the objective clinical tests and laboratory findings show a medical or psychological condition that could be reasonably expected to produce symptoms of the severity alleged.

... The medical evidence of record offers little in the way of documentary support for the claimant's contentions. The claimant's complaints are found to be vague in that the claimant simply said that she has pain. The undersigned is of the opinion that the claimant's testimony is not convincing....

... Although pain may serve as a basis for disability, the issue is not the existence of pain but whether the pain suffered by the claimant is of sufficient severity to prevent work activity. After evaluating the evidence and considering its credibility and weight, the undersigned finds and determines that the claimant does not have severe, persistent and intractable pain of such sufficient severity as to preclude the claimant from returning to her past relevant work or some variation thereof.... Claimant indicated that after sitting for long periods of time or standing for 45 minutes her legs begin to hurt and that her arms hurt after much use. However, the record shows that the claimant is relatively active in her household chores.... Although the claimant has alleged disability because of arthritis of [sic] spinal problems, the medical records show that the arthritis has not caused any severe loss of motion and there are no joint abnormalities. The medical record shows no loss of motion or nerve damage....

The ALJ concluded by finding that Hollis has the functional capacity to lift and carry twenty pounds on an occasional basis, to frequently lift and carry ten pounds, and to stand and walk for six hours during a work day. As a result of the ALJ's determinations, Hollis' request for both disability benefits and supplemental security income was denied. When the appeals council adopted the ALJ's findings, Hollis moved the District Court for the Southern District of Mississippi to reopen her case file, as her claim was now ripe for that court's review. The district court granted Hollis' motion and again referred Hollis' claim to a United States Magistrate. The Secretary, as defendant, subsequently filed a "Motion to Affirm the Secretary's Decision," and on June 23, 1987, the federal magistrate filed a "Report and Recommendation" suggesting that the decision to deny Hollis benefits was supported by substantial evidence and that, therefore, the district court should grant the Secretary's motion. Although Hollis filed written objections to the recommendation, the district court adopted the magistrate's report as the finding of the court, granted the Secretary's motion, and dismissed Hollis' case with prejudice. Hollis now brings this appeal.

## II.

The scope of our review of the Secretary's decision to deny Hollis disability benefits and supplemental security income is restricted to two inquiries: (1) does the record contain substantial evidence which supports the Secretary's position; and (2) did the Secretary apply the proper legal standards in evaluating the evidence? [3]

---

**3.** Title XVI [of the Social Security Act, 42 U.S.C. § 1381,] provides for supplemental security in-

*Hollis v. Bowen*, 832 F.2d 865, 866 (5th Cir.1987); *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir.1987). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams · v. Bowen*, 833 F.2d 509, 511 (5th Cir.1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401), 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's. *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987).

On appeal, Hollis attacks two different aspects of the Secretary's decision. First, Hollis challenges the legal standard by which the ALJ evaluated her assertions of pain. Second, Hollis challenges—as not supported by substantial evidence—the ALJ's determination that she is capable of performing her past relevant work. We address each of Hollis' arguments in turn.

### A. *The ALJ's Evaluation of Hollis' Pain*

Hollis' challenge to the legal standard used by the ALJ in evaluating her pain centers on 42 U.S.C. § 423(d)(5)(A), which Congress enacted as part of the Social Security Disability Benefits Reform Act of 1984. In pertinent part, section 423(d)(5)(A) reads:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. . . .

42 U.S.C. § 423(d)(5)(A). We recently recognized that in enacting this section, Congress was only codifying the regulation by which the Secretary evaluates pain when determining whether a person is disabled within the meaning of the Act. *Floyd v. Bowen*, 833 F.2d 529, 533 (5th Cir.1987); *see also* 20 C.F.R. § 404.1529 (1987). Hollis points out, however, that section 423(d)(5)(A) does not apply to determinations made after January 1, 1987. Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(3), 1984 U.S.Code Cong. & Admin.News (98 Stat.) 1794, 1799. Since her claims were still pending at the time the section expired, Hollis argues, we should reverse the Secretary's decision and remand the case for consideration under the proper standard. This standard, Hollis seems to assert, is established by Fifth Circuit case law—case law which recognizes, contrary to section 423(d)(5)(A), that "pain alone can be disabling."

 It is true, of course, that section 423(d)(5)(A) expired by its own terms on January 1, 1987. It is also true that, in the context of Social Security claims, "[n]ew laws apply to pending cases 'unless manifest injustice would result or there is a statutory directive or legislative history to the contrary.'" *Hampton v. Bowen*, 785 F.2d 1308, 1310 (5th Cir.1986) (citations

---

come for the disabled. Title II of the Social Security Act provides for federal disability insurance benefits. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.
*Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir.1985).

omitted). The flaw in Hollis' argument, however, is found in her conclusion that a "new law" exists which must be applied to her case. Congress intended section 423(d)(5)(A) to expire on January 1, 1987, for a reason: it intended, at that time and when the results of a study on pain were complete, to set permanent standards for evaluating pain. *Id.* at 1310 n. 2. To date, however, no new standards have been enacted. We agree with Hollis, therefore, that—at least until Congress acts—pain must be evaluated consistent with the law of this circuit. But we recently determined that even before section 423(d)(5)(A) was enacted, our case law established a standard for evaluating pain that is not materially different from either section 423(d)(5)(A) or the Secretary's regulations. *Floyd*, 833 F.2d at 534. As we explained that standard,

> pain alone and isolated as a symptom has never been a ground for compensable disability in this circuit. Rather, we have held that in some circumstances pain alone can be disabling despite the absence of supporting medical evidence for the pain itself *if* linked to a "medically determinable impairment."

*Id.* (emphasis in original) (citations omitted). Here, the ALJ explicitly rejected Hollis' claims of excessive pain as not credible; he also concluded that the medical evidence presented in the administrative proceeding did not show a medical condition that could reasonably be expected to produce such debilitating pain. Using the language of our circuit, the ALJ found that Hollis' claimed pain could not be linked to a medically determinable impairment. The ALJ did not, therefore, evaluate Hollis' pain according to an incorrect legal standard.

■ Hollis also complains that, even if the correct legal standard was used, the ALJ misapplied it to the facts of her case. She argues that since the ALJ recognized that she suffers from bursitis, arthritis, and several other medical impairments, he should also have recognized those impairments as the source from which her pain could emanate. If he had done that, Hollis concludes, the ALJ would have found Hollis' pain to be disabling despite the absence

of supporting medical evidence for the pain itself. With respect to this argument, we believe that Hollis has misframed the issue. As we explained above, we have no power to determine if the record contains substantial evidence to support Hollis' claim; instead, we are confined to questioning only whether substantial evidence supports the Secretary's judgment. The issue before us, therefore, is whether the record, as developed, contains substantial evidence that Hollis' pain was not debilitating. We find that it does.

Pain can be severe enough to create a disabling condition; however, not all pain is so severe. *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir.1987). The task of determining whether pain is disabling falls, in the first instance, within the discretion of the ALJ. And the ALJ's decision on severity is entitled to considerable deference. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir.1987) (citations omitted). The record in this case contains substantial evidence supporting the ALJ's conclusion that Hollis does not suffer from "severe, persistent and intractable pain" which would preclude her from returning to her past relevant work. For example, we recently recognized that an absence of objective factors indicating the existence of severe pain—such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition—can itself justify the ALJ's conclusion. *See Adams*, 833 F.2d at 512. In this case, Hollis' medical records fail to demonstrate any of these factors. Instead, several of Hollis' examining physicians specifically noted that despite her arthritis, Hollis has a full range of movement in her extremities. Her neurological reflexes remain intact, and no noticeable swelling of the joints was detectable from X-rays. No evidence of muscle spasm was observed by any physician either. Moreover, through the years Hollis has been given prescription medications to alleviate her symptoms. And the medical records filed by Hollis give no indication that Hollis complained to her various doctors that the prescriptions were ineffective to curb her pain.

Hollis argues, however, that she testified about how difficult it was for her to move, about how her feet and legs swell when she stands for any period of time, about how her hip becomes numb when she sits, and about how easily she becomes short of breath. Therefore, her own testimony—Hollis claims—establishes the objective factors which substantiate her allegations of debilitating pain. The problem with Hollis' argument, of course, is that the ALJ explicitly found her testimony not to be credible. Hollis acknowledges the ALJ's finding, but argues that it is incomplete because the ALJ did not indicate on the record his reasons for disbelieving Hollis, and incorrect because the ALJ's conclusion on credibility was not accompanied by a "finding of perjury or false swearing." Again, we must disagree with Hollis. In *Scharlow v. Schweiker*, we held that:

> [I]f the claimant could have prevailed if all of the claimant's evidence had been believed, the trier of fact has a duty to pass on the issue of the truth and reliability of complaints of subjective pain or the medical significance of such complaints once found credible. Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand.

655 F.2d 645, 648–49 (5th Cir. Unit A Sept. 1981) (citations omitted). We explained recently, however, that *Scharlow* does not require that the ALJ give subjective evidence precedence over medical evidence. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir.1985). Instead, *Scharlow* stands for the proposition that a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain. *Id.*

In this case, the ALJ supported—on the record—his decision that Hollis' testimony concerning the severity of her pain was not credible. He pointed to the conflict between her descriptions of her physical symptoms and the descriptions contained in her medical records. He pointed to Hollis' failure to supplement her medical records with more recent information from her primary treating physician, although she was given ample time to do so. *See supra* note 2. And finally, he pointed to the inconsistency between her testimony on pain and her daily activities; the ALJ found it significant that Hollis continues to clean house, cook, shop for groceries, do the laundry, and drive when necessary. It is clear, therefore, that the ALJ complied with *Scharlow* by "indicating the credibility choices made and the basis for those choices." It is equally clear that the choice he made—to credit the medical records over Hollis' subjective testimony—is supported by substantial evidence and may not be overturned by us. All of Hollis' complaints about the manner in which the ALJ considered her allegations of pain, therefore, are insufficient to undermine the ALJ's finding that she is not disabled. Consequently, we turn to her second argument.

### B. *The ALJ's Determination that Hollis is Capable of Performing Her Past Relevant Work*

Hollis argues that the Secretary's decision that she could perform her past relevant work is not supported by substantial evidence. Hollis' proof for this argument comes from her own testimony concerning the physical demands of the two jobs which the ALJ found her capable of performing: an assembly line worker at an electronics plant and a greeting card folder. Hollis argues that her testimony established that as an assembly line worker, she was required to stand for eight hours a day. As a greeting card folder, whether Hollis stood or sat while working depended on the type of cards she was folding. For example, she testified that she might perform her job standing for a month and then, when the size of the card changed, she might spend the next month sitting. This evidence, Hollis asserts, establishes that she is incapable of performing either job, even when her abilities are measured by the residual functional capacity which the ALJ found that she possessed. Her capacity, according to the ALJ, included the abili-

ty "to perform work-related functions except for work involving excessive heavy lifting and constant standing and carrying."

■ The Secretary responds to Hollis' argument by pointing to two additional findings the ALJ made: (1) that Hollis has the functional capacity to stand and walk for six hours during the work day and (2) that Hollis' former jobs do not require her to stand constantly. In support of the ALJ's conclusions, the Secretary points to the jobs of electronics assembler and greeting card folder as they appear in the Dictionary of Occupational Titles ("the Dictionary") published by the Department of Labor. According to the Secretary, both jobs are classified as "light jobs," meaning that the requirements of the jobs must fit within the definition of a "light job" as it appears in the Secretary's Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b) (1987). The Secretary then points us to Social Security Ruling (SSR) 83–10 Titles II and XVI: Determining Capability To Do Other Work—The Medical—Vocational Rules of Appendix 1, p. 179 (1983) ("the SSR"), a publication which clarifies the manner in which evaluations of disability under the medical-vocational rules are made. In expounding on the Secretary's definition of "light work" as it appears in the Code of Federal Regulations, the SSR explains that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday." Since the ALJ found Hollis capable of standing for a total of 6 hours per day, and since both of the jobs which the ALJ found Hollis capable of performing require at most 6 hours of standing per day, the Secretary argues, the ALJ's holding is supported by substantial evidence despite Hollis' testimony to the contrary. We agree.

To establish a prima facie case of disability, Hollis had to show that she could no longer perform her former work. *Carry*, 750 F.2d at 482; *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983). In evaluating the evidence Hollis presented to meet her burden, the ALJ was required to determine both the physical demands of the particular type of work that Hollis had done and to compare those demands with her present capabilities. *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir.1980). In this case, Hollis' description of the work she performed at the electronics assembly line and at the greeting card factory corresponds, as the Secretary contends, with the jobs of electronics assembler and greeting card folder as they appear in the Dictionary. Although Hollis testified that both jobs required, on various occasions, that she stand all day long, the Code of Federal Regulations and SSR explanation of the jobs disputes Hollis' testimony. In the past, when reviewing the exertional requirements of a particular job to determine whether a person can return to that job, we have looked to the Code of Federal Regulations for guidance. *See Carter*, 712 F.2d at 141. We think it appropriate to do so again in this case, especially given the ALJ's determination that Hollis' testimony during her hearing lacked credibility. We find, therefore, substantial evidence to support the ALJ's conclusion that neither of the jobs he found Hollis capable of performing require her to stand more than a total of six hours per day.

■ The only remaining question, therefore, is whether substantial evidence supports the ALJ's determination that Hollis has the functional capacity to stand and walk for six hours during a work day. "Residual functional capacity," as it is used in the Regulations, is a term of art which designates the ability to work despite physical or mental impairments. *Carter*, 712 F.2d at 140. A person's "residual functional capacity" is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians,

the applicant, or others of any limitations on the applicant's ability to work. *Id.* In this case, Hollis presented no evidence—other than her own testimony—that her physical impairments restrict her ability to work. As shown by her medical records, none of Hollis' numerous doctors ever restricted Hollis from engaging in activities which required standing, sitting, or carrying. Indeed, all the medical records conclude that despite any physical problems Hollis might have, she retains almost the full use of her extremities and moves with only "minimal guarding" of her lower back area. Given the medical evidence Hollis presented to the ALJ, the failure of that medical evidence to suggest any limitations on Hollis' activities, and the ALJ's determination of Hollis' credibility as a witness, we conclude that substantial evidence in the record supports the ALJ's determination that Hollis can stand and walk for six hours during a work day.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.