IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2008

No. 07-51242
Summary Calendar

Charles R. Fulbruge III
Clerk

SHERRI FOSTER

Plaintiff - Appellant

V.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-852

Before JONES, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Sherri Foster appeals from the district court's judgment affirming the denial of her application for disability insurance benefits. She argues that (1) the Administrative Law Judge ("ALJ") failed to give proper weight to the opinions of her treating and examining doctors; (2) there was insufficient evidence to support the ALJ's determination that she is able to perform sedentary work activities; and (3) the ALJ improperly evaluated her credibility.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Because the ALJ's determination is based on substantial evidence and applies the proper legal standards, we affirm.

Foster's alleged disability stems from a slip-and-fall accident at her place of employment in February 2002. After her accident, she continued working for another employer until February 2004, when she claims her pain became disabling. She filed an application for disability insurance benefits in July 2004, alleging disability due to low back pain, shoulder pain, and depression. The application was denied initially and on reconsideration, and Foster requested a hearing before an ALJ. In May 2006 the ALJ determined that while Foster's pain and depression were considered "severe" under the appropriate regulations, she was nonetheless capable of maintaining sedentary employment with "no more than superficial contact with others." Based on the testimony of a vocational expert, the ALJ determined that Foster was capable of performing jobs available in the national economy, and accordingly was not disabled. When the Appeals Council denied Foster's request for review, the ALJ's decision became the Commissioner's final decision for judicial review. Foster appealed to the district court. The parties consented to proceed before a magistrate judge, who affirmed the decision of the ALJ. This appeal followed.

Our review of a denial of disability benefits is limited. "The Commissioner's decision is granted great deference," and we will not disturb that decision unless it is unsupported by substantial evidence or is based on an error of law. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hollis v. Bowen, 837 F.2d 1378, 1383 (5th Cir. 1988) (internal citation omitted). In applying this standard we may not reweigh the evidence or substitute our own judgment for that of the Commissioner. Id. After

reviewing the record and the ALJ's detailed decision, we affirm the decision of the district court.

I

Foster first argues that the ALJ did not give proper weight to the opinions of her treating physicians. Contrary to this assertion, Foster's medical records show that the ALJ did not reject her physician's findings. Most of the lengthy excerpts Foster includes in her briefing are simply recitations of her subjective complaints, not medical findings by a physician. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (subjective complaints must be corroborated by objective medical evidence). What objective evidence she has provided supports the ALJ's determination that she is not disabled. Following Foster's fall in 2002, Dr. Chimenti opined that Foster was capable of light-duty work. As discussed below, the ALJ found no credible evidence that Foster's condition worsened between that time and February 2004, when she claimed disability. Further, according to Foster's MRI, her low back problems ranged only from "minimal" to "very mild," and her shoulder arthritis was minimal. Most importantly, none of Foster's treating or examining doctors ever opined that Foster was disabled or lacked the functional capacity to work.

The ALJ thoroughly discussed and properly accounted for the views of Foster's treating physicians. The ALJ's determination of Foster's residual functional capacity is consistent with those views and is supported by substantial evidence in the record. The ALJ found Foster could maintain sedentary employment while lifting no more than 10 pounds and performing no overhead work. The ALJ found her able to stand and walk for 2 of 8 hours, and sit for 6 of 8 hours. The ALJ determined Foster was capable of performing "simple, repetitive work while having no more than superficial contact with others." These findings are well supported by the evidence, and as the ALJ

noted, "giv[e] the claimant the benefit of the doubt regarding the limitations due to her medically determinable impairments."

As to Foster's depression, she has failed to demonstrate that the ALJ's determination was unsupported by the evidence. It is true that Foster's psychologist, Dr. Brooks, assigned Foster a subjective GAF score of 48, which tends to indicate "serious problems." See Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001). This score, however, is greatly undermined by Dr. Brooks's objective findings discussed in the body of his report. Dr. Brooks noted that Foster presented well during her evaluation, was cooperative, made good eye contact, spoke in an articulate fashion, and exhibited cognitive abilities "in the average range." Her memory was intact, and Dr. Brooks reported that she seemed "able to handle her routine needs and to provide adequate parenting for her children." While Foster did exhibit "some flattening of affect," Dr. Brooks went on to note that "she also seemed capable of spontaneity and emotional reactions." Dr. Brooks concluded his report with the statement that "[Foster's] depression alone does not appear to be so severe that she would be unable to function. She is competent." Consistent with these observations, a physician who reviewed Foster's mental health records found that Foster was only "moderately limited" in 3 of 20 categories, and "not significantly limited" in the other 17.

Foster has failed to demonstrate that the ALJ's assessment of her mental capacity lacked adequate support. To the contrary, the ALJ's findings are well-reasoned and are appropriately based on the evidence in the record. The ALJ recognized that Foster had some difficulty with concentration and with performing complicated tasks, but nonetheless found her able to "perform simple work with understanding and carrying out simple one- or two-step instructions, dealing with standardized situations with occasional or no variables in situations on the job . . . and reading, writing, and speaking in simple sentences using normal work order." Foster demonstrated mild impairment in "social

functioning," and the ALJ appropriately found that she was able to perform work with "only superficial contact" with others. These determinations are consistent with the record and are not reversible error.

II

Foster's next argument is that she lacks the residual functional capacity to perform the jobs identified by the ALJ. Based on the vocational expert's testimony, the ALJ determined that Foster could perform the jobs of compact assembler, fabricator/assembler, and semi-conductor wafer breaker, all positions existing in substantial numbers in the national economy. Foster argues, in a conclusory fashion, that these jobs exceed the scope of her limitations, citing to descriptions of these tasks in the Dictionary of Occupational Titles ("DOT"). Foster has not, however, explained how these job descriptions exceed her functional capacity as determined by the ALJ. Foster claims the position of compact assembler "requires more reaching than anticipated" by the ALJ. This assertion is inconsistent with the ALJ's findings. The only "reaching" restriction the ALJ found credible was that Foster could do no overhead work, and Foster fails to show that the position of compact assembler requires any overhead work. Her other arguments are conclusory and unpersuasive. The DOT job descriptions are consistent with the ALJ's determination that Foster could perform sedentary work with no overhead reaching and only superficial contact with others. As above, those findings are based on substantial evidence, and the vocational expert's testimony was properly based on the ALJ's hypothetical incorporating these limitations. Masterson v. Barnhart, 309 F.3d 267, 273 (5th Cir. 2002) (hypothetical question to vocational expert properly posed where it

incorporated the limitations recognized by ALJ).[1]  The ALJ's determination on this point was not in error.

### III

Finally, Foster challenges the ALJ's determination that her allegations were "not totally credible."  An ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record.  Johnson v. Heckler, 767 F.2d 180, 182 (5th Cir. 1985). Here, the ALJ gave several reasons for finding Foster not totally credible. At the beginning of the hearing, Foster indicated she had great difficulty raising her right hand for the oath, but later during testimony she spontaneously raised her right hand while gesturing with no apparent pain or difficulty.  Further, the ALJ found "no credible evidence" to indicate that Foster's discomfort became significantly worse after her initial injury in 2002.  Foster testified that after her fall she worked at RV Outlet Mall for 18 months, but quit in February 2004 when her employer refused to transfer her to an accounting position.  The ALJ viewed this as evidence that Foster believed herself able to maintain a sedentary accounting position in February 2004, which was inconsistent with her allegation of disability beginning at that time.  The record also indicated that after her fall in 2002, while Foster claimed to be unable to work her first job and was drawing workers' compensation benefits, she was continuing to work full-duty at her second job delivering flowers.  The ALJ viewed this as showing a willingness to provide false information for secondary gain.  On the whole, the ALJ's conclusion that Foster's allegations were "not credible and appear

---

[1] Foster makes an additional argument, not raised below, that her excessive absenteeism would prevent her from maintaining any of these jobs.  Even if she had preserved this argument, it is without merit.  The vocational expert testified that three absences a month would prevent a person from pursuing any of the jobs he identified.  Foster's evidence does not support her claim that she would miss this much work due to her "monthly doctor visits." Rather, the documentation she cites shows only that in some, scattered months she has been to the doctor once or twice.

exaggerated for secondary gain on occasion" is well-reasoned and supported by substantial evidence.

Foster has not shown any reversible error. Because the ALJ's decision was based on substantial evidence in accordance with the correct legal standards, the judgment of the district court is AFFIRMED.