**Alice M. OLDHAM, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 80–7691.

United States Court of Appeals, Fifth Circuit.*

Unit B

Nov. 12, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1982.

Shores & Booker, R. Michael Booker, Birmingham, Ala., for plaintiff-appellant.

Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Elyse Sara Sharfman, Dept. of HHS, Atlanta, Ga., for defendant-appellee.

Before FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges, and SCOTT **, District Judge.

CHARLES R. SCOTT, District Judge:

This action was brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary denying disability insurance benefits to claimant Alice Oldham. The district court affirmed the Secretary's decision and this appeal followed.

### Procedural History

In March 1973, Alice Oldham sustained serious injuries in an automobile-train collision, including a fracture of the right zygomatic arch, a fracture of the maxilla, a compound fracture of the right mandible, facial lacerations, fracture and dislocation of the right hip, comminuted fracture of the right distal femur, and multiple rib fractures. Claiming disability as a result of these injuries, Mrs. Oldham filed an initial application for establishment of a period of disability and for disability benefits in July 1973, but it was determined that she was ineligible to receive benefits at that time because she had only 15 quarters of coverage for the 40-quarter period ending March 31, 1973.[1] That determination was never appealed.

Claimant filed her second application for establishment of a period of disability and for disability benefits February 28, 1975, alleging that she became unable to work February 12, 1975, due to the residual effect of injuries received in the 1973 accident. After the Social Security Administration, initially and upon reconsideration, again determined that claimant lacked insured status, claimant requested a hearing before an administrative law judge (ALJ). The ALJ, finding that claimant earned two additional quarters of coverage back in 1963, concluded that she was a fully insured individual through the quarter ending December 31, 1975. He was not called upon to reach the merits of Mrs. Oldham's disability claim. Since claimant last enjoyed insured status on December 31, 1975, it was necessary for her to establish that she became disabled on or before that date in order for her to qualify for disability benefits.[2]

On June 8, 1977, the Social Security Administration determined that Mrs. Oldham was not entitled to disability insurance benefits because she failed to show she was disabled on or before December 31, 1975. The same decision was reached upon recon-

---

** District Judge of the Middle District of Florida, sitting by designation.

1. An individual is entitled to the establishment of a period of disability and to disability insurance benefits in any month only if he or she enjoys fully insured status as defined in Section 216(i)(3) and Section 223(c), *and* has had not less than 20 quarters of coverage during the 40-quarter period ending with the quarter in which disability occurs. 42 U.S.C. § 416(i)(3); 42 U.S.C. § 423(c).

An individual is considered "fully insured" for purposes of establishing a period of disability and obtaining disability benefits when he or she has not less than one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he or she attained age 21) up to the year in which disability is established. 42 U.S.C. § 414(a); 42 U.S.C. § 416(i)(3); 42 U.S.C. § 423(c).

Section 213(a) defines "quarter" as a period of three calendar months ending March 31, June 30, September 30, or December 31; and defines "quarter of coverage" as any quarter in which the individual earns $50 or more in wages. 42 U.S.C. § 413(a).

2. Although the record establishes that claimant continued to meet the "20/40" requirement, see note 1, *supra*, until recently, she ceased to occupy the status of a "fully insured individual" at the conclusion of the last quarter in 1975. In his decision entered February 24, 1977, the ALJ found that Mrs. Oldham had a total of 24 quarters of coverage at the time she terminated her employment in February 1975. Thus, under Section 214(a), read in conjunction with Sections 216(i)(3) and 223(c), her fully insured status ended on December 31, 1975, that is, following the elapse of 24 calendar years after 1950.

sideration, after which Mrs. Oldham requested a hearing before an ALJ. On February 3, 1978, the ALJ entered his decision that claimant was not disabled prior to December 31, 1975, finding that she retained the functional capacity to engage in sedentary work activity. The decision was approved by the Appeals Council at which time it became the final decision of the Secretary, thereby enabling claimant to file the instant action in federal court.

The district court, in an order entered February 1, 1979, remanded the case to the Secretary, finding no substantial evidence supporting the denial of benefits. The court stopped short of reversal, however, because it was not convinced that claimant was entitled to disability benefits. Rather, the court's decision was limited to a determination that the Secretary erred in rejecting the opinion of claimant's treating physician that claimant was totally disabled on or before December 31, 1975, in the absence of any evidence to the contrary. Although the district judge found the treating physician's opinion to be a "virtually unsubstantiated conclusion," he ruled that the Secretary was not entitled to disregard it absent substantial countervailing evidence.

On remand, the ALJ determined that it was unnecessary to hold a supplemental evidentiary hearing, choosing instead to simply reevaluate the existing evidence in greater detail.[3] He adhered to the prior determination that Mrs. Oldham had failed to show that she was disabled on or prior to December 31, 1975. The Appeals Council, apparently of the opinion that the ALJ had failed to heed the message inherent in the district court's decision that additional evidence was needed, enlisted a consulting physician to review the records and express an opinion as to Mrs. Oldham's disability. This physician, Dr. Robert O. Gordon, concluded that no severe impairment was apparent from the medical records. The Appeals Council, relying upon Dr. Gordon's opinion, approved the decision of the ALJ. Claimant again petitioned the district court to reverse the decision of the Social Security Administration. On this occasion, however, the district court, satisfied by Dr. Gordon's report, affirmed the decision of the Secretary. This appeal was taken.

### Summary of Medical Evidence

Claimant was 53 years old and had an 11th-grade education at the time she filed her second application for establishment of a period of disability and for disability benefits. She had worked as a cook in a hospital and as a sewing machine operator, the latter of which was her most recent employment, terminating in February 1975. Her claim for disability benefits, as noted, stemmed from injuries received in a 1973 accident in which the car she was riding collided with a train at a railroad crossing. Her alleged disability was claimed to have arisen not so much from the injuries themselves, but from degenerative arthritis ensuing from those injuries.

Mrs. Oldham testified that she is unable to perform housework, drive, or sit for longer than 30 minutes, due to the arthritic pain in her arms, legs, and back. She testified that she can dress and feed herself, but only with the help of her husband.

Subsequent to her accident, she has been treated intermittently by three physicians: Dr. Rex Harris, an orthopedic surgeon; Dr. Leroy Holt, a general practitioner; and Dr. Ira Holt, a cardiovascular specialist. In support of her disability, claimant relied primarily upon the opinion of Dr. Harris that she was disabled on or before December 31, 1975.

Dr. Harris treated claimant while she was hospitalized following the accident and saw her on several occasions in subsequent years. In a letter to claimant's attorney dated January 22, 1974, Dr. Harris, while acknowledging that Mrs. Oldham sustained serious injuries in the automobile-train collision, stated that she had "progressed quite satisfactorily" and was "doing quite well." The letter reflected that Dr. Harris had last examined Mrs. Oldham October 21, 1973, at which time he concluded that all of her

---

**3.** In a letter dated August 8, 1979, counsel for claimant expressed his opinion to the ALJ that no supplemental evidentiary proceedings were necessary.

fractures had healed and that she was fully ambulatory. Dr. Harris stated that he did not anticipate any further surgery upon Mrs. Oldham, but noted the "possibility of degenerative arthritis" arising in her left hip. He also reported a "mild to moderate" impairment of her right knee, concluding that her motion would be restricted by a range of 10 to 15 percent.

Dr. Harris next saw Mrs. Oldham on February 18, 1974, when he reported that she was experiencing "occasional" pain in her right hip. Nevertheless, the x-ray result was determined to be "OK." The range of motion in her right knee was found to be from 10 to 90 degrees.

The last time Dr. Harris saw Mrs. Oldham prior to the filing of her claim for disability benefits was on August 22, 1974, at which time she complained of pain in her left hip, right knee, and right ankle. At that time, Dr. Harris detected "early arthritic changes." Dr. Harris did not see claimant again for almost three years.

On July 11, 1977, more than two years after filing her claim for disability and 18 months subsequent to the expiration of her insured status, Mrs. Oldham returned to Dr. Harris, complaining of pain in her lower back, right hip, and right knee. The pain was attributed to arthritic changes and anti-inflammatory medication was prescribed. On August 8, 1977, Dr. Harris' clinical notes reflect that claimant was improved. Claimant returned four months later, at which time Dr. Harris reported that she needed "a total knee on the right." This visit, on January 15, 1978, was the last time Dr. Harris saw Mrs. Oldham.

On January 19, 1978, in response to a request from claimant's attorney for a medical opinion concerning his client's disability, Dr. Harris sent a letter in which he expressed his opinion that Mrs. Oldham was totally disabled and that it would "probably be necessary" to have surgery performed on her right knee. Apparently, this surgery has never been undertaken. In response to a subsequent "request for medical information" on behalf of claimant's attorney, Dr. Harris, in a letter dated March 23, 1978, expressed his opinion that Mrs. Oldham "... was totally disabled on, or prior, to December 31, 1975." No clinical or laboratory findings were offered to support this conclusory statement.

As stated, in addition to Dr. Harris, two other physicians have treated Mrs. Oldham subsequent to her accident—Dr. Leroy Holt and Dr. Ira Holt. Although neither of these two physicians ever expressed an opinion as to claimant's disability, their medical reports are of significance in the resolution of this appeal.

Dr. Leroy Holt is a general practitioner who has treated Mrs. Oldham on numerous occasions beginning in 1956. He saw claimant twice in 1974. No specific problems were noted in his clinical records regarding these visits.[4]

Dr. L. Holt treated claimant on several occasions in 1975. On February 28, 1975, claimant visited him complaining that her right side was numb. The result of a neurological examination, however, was listed as "OK." When claimant visited Dr. L. Holt on March 15, 1975, she told him that her feet had become numb. On March 29, 1975, he determined that she was "Doing Fine." On May 30, 1975, claimant reported that her legs had come back to life. Most of Mrs. Oldham's complaints to Dr. L. Holt in 1975 dealt with digestive problems. At no time during 1975, the year claimant alleges she became totally disabled, did Dr. Leroy Holt note any severe impairment or other abnormal findings.

Dr. Ira Holt is a cardiovascular specialist who treated Mrs. Oldham on numerous occasions in 1975 and 1976. He first saw her in October 1975, when claimant reported she was experiencing chest pain. This chest pain was ultimately attributed to a gallbladder problem rather than a heart condition. Although Dr. l. Holt's treatment of Mrs. Oldham focused on her chest pains, his

---

4. Attempting to decipher the clinical notes compiled by the particular physicians involved herein has bestowed upon the Court a renewed admiration of pharmacists and others who, uncannily, are able to derive meaning from the etchings of the medical profession without great difficulty.

clinical notes reflect that he examined her extremities in October 1975, but found no problems. No arthritic complaints are contained in Dr. I. Holt's records. His clinical notes pertaining to Mrs. Oldham's last two visits in 1975, and first two visits in 1976 respectively reflect that claimant was "Doing well" (November 24, 1975), "Tires easily" (December 23, 1975), "Doing well" (January 23, 1976), and "Doing fine" (April 16, 1976).

As noted earlier, following remand from the district court and the second finding by the ALJ that claimant was not disabled, the Appeals Council retained Dr. Robert O. Gordon to review the medical records and offer his opinion as to Mrs. Oldham's condition. Dr. Gordon, an orthopedic surgeon, found no support in the evidence for Dr. Harris' finding that claimant was totally disabled on or before December 31, 1975. Rather, Dr. Gordon concluded that "... even after the claimant developed severe arthritis of the knee, which was clearly not until 1977 or 1978, she remained capable, in my opinion, of strictly sedentary activity."

### Legal Discussion

The gist of Mrs. Oldham's argument on appeal is that the district court erred in relying upon the report of a non-treating physician and rejecting the determination of a treating physician that claimant was totally disabled on or before the relevant date.

Prior to discussing the precise issue raised on appeal, it is important to take cognizance of the limited role of this Court in reviewing decisions of the Secretary pertaining to disability claims. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g); *see Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842, 846 (1971); *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales, supra*, 402 U.S. at 401, 91 S.Ct. at 1427, 28 L.Ed.2d at 852; *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980). If supported by substantial evidence, the

Secretary's findings are conclusive, and the reviewing court is not permitted to substitute its judgment for that of the Secretary, even if the reviewing court finds the evidence preponderates toward a wholly different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence, including medical opinions, are to be resolved by the Secretary, not by the courts. *Laffoon v. Califano, supra*, at 254–55.

■ It is also important to note that, although the Secretary's decision must be supported by substantial evidence, the burden is upon the claimant to prove disability. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir.), *cert. denied*, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971); *Aldridge v. Celebrezze*, 339 F.2d 190, 191–92 (5th Cir. 1964). The burden is a heavy one, so stringent that it has been described as bordering on the unrealistic. *Johnson v. Harris*, 612 F.2d 993, 996–97 (5th Cir. 1980); *Williams v. Finch*, 440 F.2d 613, 615 (5th Cir. 1971).

■ First, the claimant must show that he or she is unable to engage in any substantial gainful employment by reason of a medically determinable physical impairment which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). Additionally, it must be shown that the disability is of such severity that the claimant is not only unable to perform his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). This is true regardless of whether such work exists in the immediate area in which claimant resides, or whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied. *Id.*

Claimant contends in this appeal that the opinion of Dr. Gordon, the consulting physician who never personally examined the claimant, did not constitute substantial evidence supporting the Secretary's denial of benefits, particularly since it was at odds

with the opinion of Dr. Harris, a treating physician.

■ The argument is that the opinion of a treating physician who has examined the claimant on a number of occasions is entitled to more weight on the question of disability than the opinion of a physician who has reviewed the medical evidence, but has never examined the patient. "All things being equal," claimant sets forth in her brief, "the report of the treating specialist/physician must be accepted on the issue of disability."

We agree with the basic tenet of claimant's argument, but, unfortunately for claimant, all things are not equal in the instant situation. It is true that the opinion of a treating physician is generally entitled to more weight than that of a non-treating physician. *Warncke v. Harris, supra,* at 416; *Strickland v. Harris, supra,* at 1109–10. In the case before us, however, Dr. Gordon's opinion that claimant was not disabled on or before December 31, 1975, is supported by the medical records of physicians who had examined claimant, including the records of Dr. Harris. Consequently, it is Dr. Harris' opinion that is contrary to the evidence. The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence.

The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. 20 C.F.R. § 404.1526 (1980).[5]

■ An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. *Kirkland v. Weinberger, supra,* at 49; *Laffoon v. Califano, supra* at 256.[6]

In *Warncke v. Harris, supra,* this Court affirmed the Secretary's denial of benefits despite the fact that claimant's personal physician had submitted a statement that his patient "... is unable to work indefinitely due to an arthritic condition in his shoulders." 619 F.2d at 415. A reviewing physician had examined claimant's medical records and concluded that he retained the ability to engage in sedentary work activity.

The panel acknowledged that little weight is to be accorded to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient. 619 F.2d at 416. Nevertheless, the Court found the treating physician's statement as to disability to be "so brief and conclusory that it lack[ed] strong persuasive weight." 619 F.2d at 417.[7]

5. "The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments." 20 C.F.R. § 404.1526 (1980).

6. The accuracy of this statement is supported by the legislative history of the 1967 amendments to the Social Security Act.

Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability for purposes of social security benefits based on disability *unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions.*

*S.Rep.No.* 744, 90th Cong., 1st Sess. 30, *reprinted in* [1967] *U.S.Code Cong. & Ad.News* 2834, 2882–83. (Emphasis added).

7. The panel distinguished *Johnson v. Harris,* 612 F.2d 993 (5th Cir. 1980), wherein a panel of this Court stated that the opinion of a reviewing physician who never examined the claimant, taken alone, would not constitute substantial evidence on which to base an administrative decision. *Id.* at 998. The record in *Johnson,* however, did not show that the opinions of the reviewing physicians were based on acceptable medical evidence. The Court remanded the case for the purpose of, *inter alia,* determining whether the reviewing physicians had in fact examined the claimant or whether they possessed "other adequate acceptable information" upon which to base their reports. *Id.*

Claimant relies upon *Strickland v. Harris, supra,* to support her apparent position that the opinion of a treating physician always overshadows the opinion of a non-treating physician. In *Strickland,* this Court reversed the district court's order granting summary judgment in favor of the Secretary because the panel found no substantial evidence supporting the Secretary's finding that the claimant was capable of returning to one of her former occupations.[8] In denying benefits to claimant Strickland, the Secretary, as well as the district court, relied upon the report of one Dr. Wilkers, a reviewing physician for the Disability Determination Unit.

Dr. Wilkers determined that the evidence failed to show a disabling condition lasting at least 12 months. His opinion, however, was contrary to the evidence. Of eight physicians and one psychologist who examined the claimant, Dr. Wilkers was the only one who concluded unequivocally that she was not disabled. Dr. Gilliken, claimant's personal physician, made detailed findings supporting his opinion that she was disabled. Another physician, a consultant to the Disability Determination Unit, also concluded that she was disabled. Two other physicians, while not expressing an opinion as to disability, found the claimant was suffering from melancholic depression and internal hemorrhoids. Yet another physician diagnosed the claimant as suffering from: "1. Non-healing abdominal wound 2. Bronchitis 3. Anxiety 4. Functional Gastrointestinal Distress." Claimant's therapist, an applied psychologist, stated that claimant ". . . may not be able to [work] due to her habitual unproductiveness." One Dr. Wills, a neurologist and psychiatrist, examined claimant but concluded that "I am unable to evaluate the significance of the complaints given in this history," although he did set forth his belief that

claimant was exaggerating or dramatizing her condition. *Id.* at 1107.

Dr. Wilkers, the reviewing physician, based his report upon the medical observations of Dr. Gilliken and Dr. Wills. This Court was of the opinion that little weight should be accorded to Dr. Wilkers' opinion: first, because he had never treated the claimant; and second, because the opinion was based upon the report of Dr. Gilliken, claimant's personal physician, who reached a contrary conclusion as to disability and the report of Dr. Wills, an examining physician who expressly stated that he was unable to offer an opinion as to claimant's disability. In light of the overwhelming evidence supporting claimant's disability, the panel reversed the district court's summary judgment in favor of the Secretary and remanded the case for further proceedings.

The instant situation is more akin to *Warncke* than to *Strickland.* In *Strickland,* the opinion of the reviewing physician was clearly contrary to the evidence and, hence, was properly rejected. In *Warncke,* the opinion of the reviewing physician was supported by the evidence. Moreover, the court did not feel compelled to attach controlling weight to a brief, conclusory statement as to disability, even where the statement was submitted by the claimant's personal physician.

■ Contrary to the situation in *Strickland,* the opinion of the reviewing physician in the case *sub judice* is supported by the evidence. Although Dr. Gordon's opinion is contrary to the opinion of Dr. Harris, it is not contrary to the findings of either of the Drs. Holt, both of whom treated Mrs. Oldham on numerous occasions during the relevant period. In fact, the opinion of Dr. Gordon is not even in conflict with Dr.

---

8. The ALJ had limited the inquiry to whether claimant Strickland was capable of returning to one of her former occupations. Apparently because he determined that she was so capable, he did not consider it necessary to reach the question of whether she was capable of engaging in *any* substantial gainful employment as set forth in 42 U.S.C. § 1382c(a)(3)(B) (Supplemental Security Income provisions), which par-

allels 42 U.S.C. § 423(d)(2)(A) (Federal Old Age, Survivors, and Disability Insurance Benefits). See text, *supra.*

Consequently, the panel remanded the case with instructions to consider claimant Strickland's ability to undertake substantial, gainful employment other than that in which she was formerly engaged.

Harris' own medical findings, as reflected in his clinical notes.

Furthermore, the conclusory nature of the medical opinion offered by Dr. Harris detracts from whatever persuasive weight it might otherwise have carried. While it is true that the opinion is consistent with his earlier finding that a "possibility of degenerative arthritis" existed, as well as with the record notation made in connection with Mrs. Oldham's August 22, 1974 visit showing "early arthritic changes," the opinion is totally devoid of any support in the way of clinical or laboratory findings. Indeed, it would be difficult to imagine how Dr. Harris could support his opinion with medical evidence in light of the fact that he never treated Mrs. Oldham during the year in which she supposedly became totally disabled. In fact, his opinion was offered subsequent to a period of almost three years in which he never saw claimant. As noted by Dr. Gordon in his report to the Appeals Council, the finding of only mild arthritic changes just a few months prior to the date upon which claimant alleges she became totally disabled, combined with the absence of any visits to Dr. Harris during this period, refutes a finding of severe impairment on or before December 31, 1975.

Accordingly, because the opinion of the reviewing physician is supported by the evidence, the district court was entitled to accept that opinion and reject the conclusory opinion of Dr. Harris, one of claimant's treating physicians. Thus, finding substantial evidence supporting the decision of the Secretary denying disability insurance benefits to Alice Oldham, we AFFIRM the decision below.

AFFIRMED.