Camoleet LEWIS, Plaintiff,

v.

Larry G. MASSANARI,[1] Acting Commissioner of Social Security, Defendant.

Civil Action No. 00–0948–RV–M.

United States District Court,
S.D. Alabama,
Southern Division.

Aug. 9, 2001.

Gilbert B. Laden, Mobile, AL, for plaintiff.

Patricia Nicole Beyer, U.S. Attorney's Office, Mobile, AL, for defendant.

## ORDER

VOLLMER, Senior District Judge.

After due and proper consideration of all pleadings in this file, and there having been no objections filed, the Recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) is adopted as the opinion of this Court.

It is ORDERED that this action be REMANDED to the Social Security Administration for further procedures not inconsistent with the Orders of this Court.

## REPORT AND RECOMMENDATION

MILLING, United States Magistrate Judge.

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits. The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard on July 9, 2001. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be reversed, that this action be

---

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted, therefore, for Commissioner Kenneth S. Apfel as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

remanded for further procedures consistent with the Orders of the Court, and that judgment be entered in favor of Plaintiff Camoleet Lewis and against Defendant Larry G. Massanari.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983), which must be supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler,* 724 F.2d 914, 918 (11th Cir.1984), *quoting Jones v. Schweiker,* 551 F.Supp. 205 (D.Md.1982).

Plaintiff was born August 20, 1958. At the time that she last qualified for disability insurance, December 31, 1997, Lewis was thirty-nine years old, had completed a high school education (Tr. 269),[2] and had previous work experience as a licensed practical nurse and as an office manager/bookkeeper (Tr. 269, 284). In claiming benefits, Plaintiff alleges disability due to chronic fatigue/immune dysfunction syndrome (hereinafter *CFS* ), fibromyalgia, anxiety, and depression (Doc. 12, p. 3).

The Plaintiff filed an application for disability insurance on July 7, 1992 (Tr. 50–53).[3] Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Lewis was capable of performing her past relevant work as an office manager/bookkeeper and that she was "not disabled through December 31, 1997, the date she [was] last insured for disability purposes" (Tr. 249; *see generally* Tr. 236–53). Plaintiff requested review of the hearing decision (Tr. 231–24) by the Appeals Council, but it was denied (Tr. 226–27).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Lewis alleges that: (1) The ALJ did not properly consider the opinions and diagnoses of her treating physician; (2) the ALJ did not properly consider her nonexertional limitation of depression; and (3) the ALJ improperly rejected her testimony concerning her pain and fatigue (Doc. 12).

Plaintiff claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians. Lewis specifically refers to the reports and diagnoses of Dr. W.P. Dickinson and psychologist Kent Welsh. It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir.1981);[4] *see also* 20 C.F.R. § 404.1527 (2000).

Before discussing the evidence provided by Dr. Dickinson, the Court notes that Lewis was examined twice by a rheumatologist, Dr. Joe G. Hardin, who found that she had chronic fatigue syndrome "as typi-

---

**2.** Plaintiff testified that she had received a Graduate Equivalency Degree (Tr. 269).

**3.** This case has been pending for a long time. Without going through all of the procedural history, the Court notes that it was appealed to this Court once before but was sent back to the Social Security Administration following a request for remand by the government.

**4.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

cal as that syndrome gets" (Tr. 139). In a letter dated May 21, 1992, the doctor stated that he did not know of anything he could do for her and he did not know of any other doctor that could help her either (*id.*).

Dr. W.P. Dickinson, in a letter dated October 12, 1993, stated that he had been treating Plaintiff for nine months and that "most if not all of her physical problems are related to chronic fatigue syndrome" (Tr. 176). The doctor noted that Lewis met all criteria of CFS, as established by the Centers for Disease Control, setting out the following:

> The physical criteria, which she has met on multiple occasions, include low-grade fever, nonexudative pharyngitis, and palpable and/or tender lymph nodes. The symptom criteria she meets include profound and prolonged fatigue after exertional levels easily tolerated before, intermittent low grade fever, intermittent sore throat, intermittent painful lymph nodes (with and without palpable lymphadenopathy), muscle weakness, myalgias, insomnia, intermittent headaches of a type she had not previously had, migratory arthralgias without joint swelling or redness, and severe neuropsychologic problems including inability to concentrate, difficulty thinking, visual disturbances, forgetfulness, confusion, and others. Thus she meets all 10 of the symptom criteria, whereas by the CDC guidelines a patient only needs to meet 8 out of the 10 for the diagnosis.... [S]ince a severe attack in November of 1991, she has almost always had the severe fatigue, the cognitive disturbances, the aches, and most of the other symptoms.... I have a few "classic" cases of chronic fatigue syndrome in my practice, along with a number of patients who are not quite so classic in whom the diagnosis may be more sus-

pect. Mrs. Lewis certainly fits in the classic group in virtually all aspects of her case.

(Tr. 176–77). Dickinson went on to state that Plaintiff "had intermittent problems with depression" which came about because of her limitations (Tr. 177). In discussing the physical capacities evaluation form which he completed, the doctor noted that the form was not a good fit for her incapacities and stated as follows:

> [S]he becomes exhausted with very minor activities, such as simply riding in the car to the store with her husband, doing minor household chores, or cooking. The cognitive impairment makes it difficult for her to read or to focus on any time [sic] of task involving thinking and memory. In fact, the cognitive impairment may be the most disabling part of the disease for her, with an extreme decrease in her overall thinking abilities.... At this point I would consider her incapable of any work, part-time or otherwise. Minimal activity of any type sustained over any period of time is going to make her symptoms worse, and the only way for her to get better at all is to greatly decrease her activity level and get an extreme amount of rest. I anticipate that will continue to be the case for the near future.

(Tr. 178). Dickinson's physical capacities evaluation form indicated that Lewis was capable of sitting for two-to-three hours per day, but was incapable of walking or standing for any amount of time (Tr. 179). Plaintiff could lift and/or carry only as much as five pounds on an occasional basis and was not able to use arm or foot controls (*id.*). The Court notes that these limitations would prevent Lewis from doing even sedentary work. *See* 20 C.F.R. § 404.1567(a) (2000).

Dr. Dickinson continued to see Lewis, noting, on a regular basis, that her condition was stable (Tr. 205–11, 213–14, 362–89,). In an attempt to alleviate her symptoms, Lewis used a TENS unit (Tr. 182, 186, 211) and has routinely taken Fiorinal 3 and Tylenol 3, both class III narcotics (*see, e.g.,* Tr. 182, 184, 206, 214, 367, 370, 394; *Physician's Desk Reference* 1364–65, 2052–53 (48th ed.1994)). Dickinson has prescribed wellbutrin and sinequan for her depression (Tr. 213, 394; *Physician's Desk Reference* 762, 1989 (48th ed.1994)) and Ativan for her anxiety (Tr. 394; *Physician's Desk Reference* 2516–17 (48th ed.1994)).

Plaintiff's depression was confirmed by psychologist D. Kent Welsh who administered several tests, finding her to be in the range of borderline intellectual functioning (Tr. 200–04). Results from the Minnesota Multiphasic Personality Inventory prompted the psychologist to state the following:

> Ms. Lewis is experiencing considerable stress and discomfort. The profile is similar to patients who have chronic physical illness. These individual [sic] focus much of their attention and energy on their physical symptoms and also experience feelings of helplessness and hopelessness. Ms. Lewis [sic] profile also contains indicators of extreme passivity and withdrawal along with a sensitivity to being slighted by others. She is easily overwhelmed by anxiety and depression.

(Tr. 203). Based on his diagnosis of major depression, Welsh found that Plaintiff had "marked restriction in her activities of daily living as well as difficulty maintaining her social functioning" (Tr. 204).

Plaintiff testified that she had pain in her joints, muscles, and back "pretty much most of the time" (Tr. 272–73). She stated that she could prepare toast, sandwiches or a hamburger, but nothing else because she could not stand very long (Tr. 273).

She cannot mop or vacuum or do much housekeeping (Tr. 274). Because of pain, she cannot sit in one position, stand for long, or walk (Tr. 277–28). She cannot concentrate to read (Tr. 278).

The ALJ cited the evidence of record and found that Lewis suffered from CFS and fibromyalgia, but found that she was capable of sedentary work (Tr. 249). He concluded that the opinion of Dr. Dickinson was unsupported "by medically acceptable clinical and laboratory diagnostic techniques" (Tr. 246). The ALJ based his decision, at least in part, on the fact that Dickinson regularly indicated that her condition was stable (*id.*). The ALJ based his conclusions on the fact that Lewis's husband was out of town for long periods of time and that the bulk of the housework fell to her to do as justification for denying the severity of her impairments (Tr. 246–47); he also noted that she had gone to visit her husband in Chicago, an activity which was inconsistent with her abilities as stated by Dickinson (*id.*). The ALJ also rejected the opinion of Welsh as inconsistent with the other evidence of record (Tr. 248) and rejected Plaintiff's testimony concerning her abilities (*id.*).

The Court finds that the ALJ's conclusions are not supported by substantial evidence. Dr. Dickinson clearly stated, in his letter of October 12, 1993, that Plaintiff met all criteria as set out by the Centers for Disease Control (Tr. 176–78). Dickinson referred to Lewis's condition as stable which means unchanged; the ALJ's reading indicated otherwise. The Court also notes its understanding that CFS is a disease diagnosed through a process of elimination; it is only after other disorders and diseases are discarded that a doctor can diagnose CFS as is it is not amenable to objective medical testing. Furthermore, the ALJ discounts the opinions of Dickinson, Welsh, and Lewis as inconsistent with

the other evidence of record; however, the ALJ points to no other evidence. The Court notes, for the record, that there is no conflicting evidence and that the evidence provided by Welsh supports Dickinson and that the evidence of both supports Lewis's testimony.

When the evidence provided by Dickinson, Welsh, and Lewis are considered together, there is no doubt that Plaintiff has demonstrated disability. The ALJ admitted as much (Tr. 285–86). The ALJ, however, discredited that evidence, an opinion which this Court finds is unsupported. It seems clear to the Court that Plaintiff should be awarded benefits.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Therefore, it is recommended that the action be reversed and remanded to the Social Security Administration for further administrative proceedings consistent with the rendering of benefits to Plaintiff.

Furthermore, it is recommended that a final judgment be entered ordering remand in this action pursuant to sentence four of 42 U.S.C. § 405(g). *See Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

### *MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT*

1. *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to

do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc* ). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable where proceedings tape recorded).* Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the

magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.